

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

ANTONIO RENALDO WALLACE,

        Petitioner,

v.                                   Criminal No. 4:17-CR-029

UNITED STATES OF AMERICA,

        Respondent.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Antonio Renaldo Wallace's ("Petitioner") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Pet'r's Mot. Compassion. Release, ECF Nos. 207, 208 ("Pet'r's Mot."). The Government opposed the motion. Gov't Resp. Opp. to Pet'r's Mot. Compassion. Release, ECF No. 215 ("Resp. Opp."). Petitioner replied. Pet'r's Reply to Gov't Resp. Opp. to Pet'r's Mot. Compassion. Release, ECF No. 218 ("Pet'r's Reply"). Petitioner submitted Notice of Supplemental Authority. Pet'r's Supp. Auth. to Pet'r's Mot. Compassion. Release, ECF No. 221 ("Pet'r's Supp. Auth."). This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED.** Furthermore, the Court finds an evidentiary hearing unnecessary to rule based on the medical evidence.

### I.    FACTUAL AND PROCEDURAL HISTORY

On April 12, 2017, a Grand Jury in the Eastern District of Virginia indicted Petitioner on three counts: Count One charged Petitioner with Conspiracy to Possess with Intent to Distribute

Cocaine, in violation of 21 U.S.C. § 841(a)(1) and b(1)(B);[1] Count Five charged Petitioner with Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841; Count Six charged Petitioner with Felon in Possession of Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). Second Sup'g Indict., ECF No. 37 ("Indictment"). On January 3, 2018, Petitioner pled guilty to Count One, Conspiracy to Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B). Plea Hear'g, ECF No. 104; Plea Agreement, ECF No. 105. On May 9, 2018, the Court sentenced Petitioner to 162 months imprisonment followed by five years of supervised release. J., ECF No. 143. On February 3, 2023, Petitioner filed his Motion for Compassionate Release through counsel. ECF No. 207. Petitioner filed his Memorandum in Support of his motion through counsel on February 3, 2023. Pet'r's Mot. On March 8, 2023, the Government filed its response in opposition. Resp. Opp. On March 20, 2023, the Petitioner filed his reply to the Government's response. Pet'r's Reply. On June 2, 2023, Petitioner filed his Notice of Supplement Authority. Pet'r's Supp. Auth.

According to his Presentence Investigation Report ("PSR"), law enforcement executed a search warrant at Petitioner's residence. Present. Investig. Rep. ¶¶ 9-12, ECF No. 213 ("PSR"). During the search, law enforcement found 5 kilograms of cocaine, .3128 grams of "crack" cocaine, .463 grams of heroin, a loaded Glock 23 handgun, and a loaded Mossberg 12 gauge shotgun. *Id.* Petitioner reported both physical and mental health issues, including being diagnosed with high cholesterol and depression. *Id.* ¶¶ 62-67. Additionally, Petitioner reported having substance abuse issues such as frequent alcohol consumption and illegal drug use. *Id.* ¶¶ 68-73. The PSR assessed Petitioner with a total offense level of 31, a criminal history category of VI, and a recommended

---

[1] In the Superseding Indictment, Count One charged Petitioner with Conspiracy to Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846. However, Petitioner pled guilty to Count One, Conspiracy to Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) and b(1)(B).

Guidelines sentence of 188-235 months on Count One. *Id.* ¶¶ 86-87. Petitioner is incarcerated at Ashland FCI with a projected release date of September 20, 2028.[2]

On April 11, 2020, Petitioner submitted a Request for Compassionate Release to the Warden. Pet'r's Mot. at Ex. D. On May 1, 2020, the Warden denied Petitioner's request. *Id.* On June 1, 2020, Petitioner submitted a second Request for Compassionate Release to the Warden. *Id.* On June 19, 2020, the Warden denied Petitioner's second request. *Id.* On July 5, 2020, Petitioner appealed his Request for Compassionate Release to the Mid-Atlantic Regional Office. *Id.* On June 4, 2021, the Central Office of the Federal Bureau of Prisons denied Petitioner's last appeal. *Id.*

## II.    LEGAL STANDARD

### A. The Threshold Requirement Standard

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the Bureau of Prisons ("BOP") bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies."). In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their

---

[2] *See also* Federal Bureau of Prisons, "Find an Inmate," *BOP.gov*, https://www.bop.gov/inmatelocl/ (last visited Aug. 30, 2023) (listing Petitioner's release date as Sept. 20, 2028).

initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the FIRST STEP Act was passed, the Sentencing Commission provided that a sentence may be modified because of the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition

4

the district court for relief. *Id.*

U.S.S.G. § 1B1.13 is now outdated, however, following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *see also United States v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020), *reconsideration denied*, No. 15 CR. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release . . . [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts . . . ."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive."). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III.   DISCUSSION

#### A. The Threshold Requirement

The Court finds that Petitioner satisfied the threshold requirement. The Government does not contest such. *See* Resp. Opp. On April 11, 2020, Petitioner submitted a Request for Compassionate Release to the Warden. Pet'r's Mot. at Ex. D. On May 1, 2020, the Warden denied Petitioner's request. *Id.* On June 1, 2020, Petitioner submitted a second Request for Compassionate Release to the Warden. *Id.* On June 19, 2020, the Warden denied Petitioner's second request. *Id.* On July 5, 2020, Petitioner appealed his Request for Compassionate Release to the Mid-Atlantic

Regional Office. *Id*. On June 4, 2021, the Central Office of the Federal Bureau of Prisons denied Petitioner's last appeal. *Id*. Accordingly, on February 3, 2023, Petitioner filed his motion through counsel. Pet'r's Mot. Thus, more than 30 days passed since Petitioner filed his request.

**B. Petitioner's Compassionate Release Request**

The Court now addresses whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence. Petitioner argues the lack of resources at the BOP facility to address Petitioner's health concerns and COVID-19 warrants compassionate release. Pet'r's Mot. at 1-2. Petitioner further argues the BOP has not demonstrated best practices regarding treating those with serious illnesses. *Id*. at 2-3. Lastly, Petitioner argues the sentencing factors under 18 U.S.C. § 3553(a) support compassionate release. *Id*. Petitioner alleges these circumstances, including his rehabilitative efforts, constitute extraordinary and compelling reasons for his release. *Id*. Therefore, Petitioner asks the Court to allow him to serve the balance of his sentence in home confinement. *Id*. at 20-21.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. Petitioner, age 40, asserts he suffers from hypertension, hyperlipidemia, obesity, and long covid, making him more likely to suffer severe illness. Pet'r's Mot. at 4-5; 9. Although Dr. Karnik states Petitioner is at risk of developing other medical issues due to Ashland FCI's inadequate care, Petitioner's medical records indicate that he receives regular medical care. ECF. No. 210 at Ex. B. In addition, Petitioner has not shown the BOP facility cannot manage his medical needs. Resp. Opp. at 10. Even though the medication prescribed to Petitioner may have caused negative side effects, Ashland's medical staff determined Petitioner's treatment plan.

Moreover, Petitioner argues that he suffers from hyperlipemia, also known as high cholesterol. Pet'r's Mot. at 9. However, the CDC does not consider those with high cholesterol at

6

high risk for COVID-19.[3] Petitioner is also fully vaccinated with the Pfizer vaccine, which mitigates the risk of contracting COVID-19. ECF No. 210 at Ex. B at 115. Even though the Petitioner had COVID-19 twice, it does not support particular susceptibility because of the availability of routine vaccines and testing at BOP facilities. Resp. Opp. at. 13. Thus, Petitioner has not established a particular susceptibility to COVID-19 that would constitute extraordinary and compelling circumstances.

Second, Petitioner does not show a potential risk of contracting the disease at Ashland FCI. As of September 5, 2023, zero inmates and staff members at Ashland FCI are positive for COVID-19.[4] *See United States v. Woolridge*, No. 3:09cr156 (DJN), 2021 WL 415131, at *5 (E.D. Va. Feb. 5, 2021) (finding no particularized risk where there were only eight active cases of COVID-19 at the petitioner's facility); *see also United States v. Wilkins*, No. 7:17-cr-407-JMC-1, 2021 WL 194311, at *3 (D.S.C. Jan. 20, 2021) (finding no particularized risk where there were only ten active cases at the petitioner's facility). The low number of positive COVID-19 cases at Petitioner's facility indicates a low risk of contracting the virus. Although Petitioner notes the lingering effects of coronavirus at his prison facility, as of September 5, 2023, the BOP reports 273 inmates and 197 staff have contracted and recovered from COVID-19.[5] The numbers show that the COVID-19 cases at the facility are improving.

On the other hand, Petitioner claims to be suffering from Long Covid. However, Petitioner has not shown that the BOP facility cannot treat his possible Long Covid symptoms. Furthermore,

---

[3] *People with Certain Medical Conditions*, CDC (last visited Sept. 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#MedicalConditionsAdults.
[4] *COVID-19 Cases*, FED. BUR. PRISONS (last visited Sept. 5, 2023),
https://www.bop.gov/coronavirus/covid19_statistics.html.
[5] *Id.*

Petitioner's vaccination status helps reduce the risk of serious illness from Long Covid.[6] Petitioner also proposes living with his mother in Hampton, Virginia, where he would be safer from contracting the virus. However, Hampton has an average of 5 new COVID-19 cases a day.[7] Even if the Court decided to release Petitioner to home confinement, he would put his mother at a severe risk of contracting COVID-19 due to her age of 59 years old. PSR ⁋ 60.[8] Furthermore, the Petitioner has failed to show receiving medical care outside of Ashland FCI would be better if released. Currently, the medical staff at Ashland FCI are addressing Petitioner's medical needs. *See* ECF No. 210 at Ex. B. Although the Court recognizes, and in no way minimizes the harsh realities incarcerated individuals have faced during the pandemic, Petitioner does not mention any potential harsher conditions of confinement that are unique to him for purposes of compassionate release. *See United States v. Ramirez*, 2021 WL 5233512, at *5 (S.D.N.Y. Nov. 10, 2021) ("If challenging the conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction."). Therefore, Petitioner is not entitled to compassionate release because he has not shown a possible risk of contracting COVID-19 at Ashland FCI.

Third, the § 3553(a) factors do not weigh in Petitioner's favor for compassionate release. The seriousness of Petitioner's conduct for his possession with intent to distribute a controlled substance and carrying two firearms remains unchanged. Petitioner has a lengthy criminal history involving drug possession and possessing a firearm as a felon. PSR ⁋⁋ 34-45. Additionally, Petitioner committed the instant offense while under a criminal justice sentence for a Virginia state

---

[6] Tae Chung et al., *Long Covid: Long-Term Effects of Covid-19*, JOHN HOPKINS MEDICINE (last visited Sept. 5, 2023), https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/covid-long-haulers-long-term-effects-of-covid19.
[7] *Tracking Coronavirus in Hampton, VA.: Latest Map and Case Count*, N.Y. TIMES (last visited Sept. 5, 2023), https://www.nytimes.com/interactive/2021/us/hampton-virginia-covid-cases.html.
[8] The PSR report was filed in 2018. At the time, Petitioner's mother was 54 years old.

law crime. PSR ¶ 47. Petitioner also had two disciplinary incidents while in BOP custody. Pet'r's Mot. at 21. This trend cuts against Petitioner's argument that he is not a danger to the community. *Id*. Although the Court recognizes and commends the Petitioner for his participation in various rehabilitative courses, these efforts are not extraordinary and compelling to earn a sentence reduction. Pet'r's Mot. at 23. As noted by sister courts, a "defendant's rehabilitation alone proves insufficient to warrant a sentence reduction." *See* United States v. Woolridge, No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021); *see also* United States v. Ahmad, No. 1:11-cr-554-TSE, ECF No. 75 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not uncommon for a defendant to take educational classes to pass the time in prison"); *see also* United States v. Locust, 591 F. Supp. 3d 12, 25 (E.D. Va. Mar. 16, 2022) (noting Defendant has "do[ne] the things that prisoners are supposed to do" while incarcerated. United States v. Logan, 532 F. Supp. 3d 725, 735 (D. Minn. 2021) ("Prisoners are supposed to follow the rules . . . to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary.")).

Additionally, Petitioner's release plan includes a recommendation from Dr. Murrie. However, it does not adequately protect the public from the potential of a subsequent offense. Petitioner proposes to live with his mother in Hampton, Virginia where he can complete the remainder of his sentence. Pet'r's Mot. at 24. Petitioner notes he has an employment offer at a local restaurant where he worked before his federal incarceration. *Id*. Petitioner also intends to earn his General Education Development (GED) Diploma and commercial driver's license. *Id*. at 25. However, if released, Petitioner return to the same community and family where he committed the instant offense. *See* Holloman v. United States, No. 4:14-CR-68, 2020 WL 5913994, at *3 (E.D. Va. Oct. 6, 2020) (noting Defendant would return to live with his parents—"the same

location in which the initial offense occurred."). Although Petitioner's mother has remained free from substance abuse for many years, she has a long history of substance abuse and may put Petitioner at risk of reoffending. *See* PSR ¶ 59.

Furthermore, Petitioner does not explain or elaborate on how his release plan would provide a viable alternative to serving the remainder of his sentence. Despite commendable evidence of Petitioner's rehabilitation, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and his release would not promote the respect for law or provide adequate deterrence. Critically, Petitioner also did not show extraordinary or compelling reasons for release as a result of COVID-19 and his ongoing health issues. Therefore, Petitioner does not qualify for compassionate release.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for Compassionate Release, ECF No. 207, is **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Newport News, Virginia
September *11* , 2023

Raymond A. Jackson
**United States District Judge**